of a district court that is reasonably supported by the record.[15] We cannot conclude from the record that the findings of the district court in the § 2-105(B)(5) hearing were so unsubstantiated that any purported errors were injurious to the integrity, reputation, or fairness of the judicial process as to justify reversal on appeal under the plain error doctrine.[16]

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

AFFIRMED.

HEAVICAN, C.J., and CASSEL, J., not participating.

_____

[15] *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

[16] See *id*.

_____

STATE OF NEBRASKA, APPELLEE, v.
TILLMAN T. HENDERSON, APPELLANT.
___ N.W.2d ___

Filed October 17, 2014.    No. S-13-559.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5.  **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion.

6.  **Criminal Law: Pretrial Procedure: Appeal and Error.** Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.

7.  **Motions for Mistrial: Appeal and Error.** Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

8.  **Search and Seizure: Arrests: Police Officers and Sheriffs.** The police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested.

9.  **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.

10. **Search Warrants: Probable Cause: Words and Phrases.** Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.

11. **Constitutional Law: Probable Cause.** In addition to the requirement of probable cause, the Fourth Amendment contains a particularity requirement.

12. **Constitutional Law: Search and Seizure: Search Warrants: Probable Cause.** The Fourth Amendment's particularity requirement must be respected in connection with the breadth of a permissible search of the contents of a cell phone. Accordingly, a warrant for the search of the contents of a cell phone must be sufficiently limited in scope to allow a search of only that content that is related to the probable cause that justifies the search.

13. ____: ____: ____: ____. The particularity requirement of the Fourth Amendment protects against open-ended warrants that leave the scope of the search to the discretion of the officer executing the warrant, or permit seizure of items other than what is described.

14. **Search Warrants: Search and Seizure.** A warrant satisfies the particularity requirement if it leaves nothing about its scope to the discretion of the officer serving it. That is, a warrant whose authorization is particular has the salutary effect of preventing overseizure and oversearching.

15. **Motions to Suppress: Search Warrants: Affidavits: Police Officers and Sheriffs: Evidence: Search and Seizure.** The good faith exception to the exclusionary rule provides that evidence seized under an invalid warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant. Nevertheless, evidence suppression will still be appropriate if one of four circumstances exists: (1) The magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless

disregard for the truth; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

16. **Search and Seizure: Police Officers and Sheriffs.** The good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite a magistrate's authorization.

17. **Search Warrants: Affidavits: Police Officers and Sheriffs: Appeal and Error.** In assessing the good faith of an officer's conducting a search under a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.

18. **Criminal Law: Trial: Evidence.** Where objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing the initial possession of the object or article to its final custodian; and if one link in the chain is missing, the object may not be introduced in evidence.

19. **Trial: Evidence: Proof.** Proof that an exhibit remained in the custody of law enforcement officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence.

20. **Trial: Evidence.** Whether there is sufficient foundation to admit physical evidence is determined on a case-by-case basis.

21. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

22. **Criminal Law: Due Process: Pretrial Procedure.** A defendant in a criminal proceeding has no general due process right to discovery.

23. **Criminal Law: Constitutional Law: Due Process: Rules of Evidence.** Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

24. **Pretrial Procedure.** A defendant does not have an unfettered right to discovery.

25. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

26. **Motions for Mistrial: Proof.** A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial. Instead, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Matthew J. Miller, and Zoë R. Wade for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Tillman T. Henderson appeals his convictions in the district court for Douglas County for several felonies. He claims, inter alia, that the district court erred when it denied his motion to suppress evidence obtained from a search of the contents of a cell phone that was found on his person at the time he was arrested. We affirm Henderson's convictions and sentences.

## II. STATEMENT OF FACTS

### 1. Charges and General Evidence

Henderson was convicted of first degree murder in connection with the shooting death of Matthew Voss and attempted first degree murder in connection with the shooting of Antonio Washington. He was convicted of two counts of use of a deadly weapon to commit a felony in connection with the foregoing crimes. He was also convicted of possession of a deadly weapon by a prohibited person.

Testimony at trial indicated that in the early morning hours of February 18, 2012, a fight broke out at an after-hours party in downtown Omaha, Nebraska. Witnesses reported seeing two men firing guns. Voss and Washington both sustained gunshot wounds; Voss died as a result of his wounds, while Washington survived but was severely injured.

Henderson was apprehended by police as he was running from the scene of the incident. A person who was at the scene had identified Henderson to a police officer as one of the shooters. The other suspect was not apprehended. One gun was found on Henderson's person when he was arrested, and a police officer saw Henderson throw another gun under a vehicle as the officer was chasing him.

Forensic evidence presented at trial indicated that bullets and casings found at the scene of the shootings had been fired from the gun found on Henderson and from the gun he was seen throwing under a vehicle. A fingerprint on the gun found under the vehicle matched Henderson's. In addition, DNA testing of blood found on the clothing worn by Henderson at the time of his arrest indicated that the blood had come from Voss.

The State maintained at trial that Henderson shot Voss and Washington to retaliate for an assault on Henderson's friend, Jimmy Levering. Levering and Voss had both been inmates at a prison in Florida, and Voss had allegedly stabbed and punched Levering.

### 2. APPREHENSION OF HENDERSON

Omaha police officer Paul Sarka responded to a call regarding a fight or disturbance in the area of 16th and Harney Streets around 3 a.m. on February 18, 2012. Sarka saw a group of people outside a building in the area, but he did not see a disturbance. He circled the block and then pulled his police cruiser into an alley to park and write a report on his response to the call. Soon after parking, Sarka heard several gunshots. He pulled his cruiser out of the alley and, with the lights and sirens turned on, drove in the direction from which he thought he had heard the gunshots, which direction was toward the group of people he had seen near 16th and Harney Streets. As he drove, he radioed a message to dispatch saying, "'Shots were fired. Send more officers.'"

Sarka saw 20 to 30 people running from the scene screaming and looking like they were in fear. Sarka yelled out of his cruiser's window to the people asking them who had done the shooting, but he did not get a response. The driver of a white sport utility vehicle rolled down his window, and when Sarka asked whether the driver had seen who did the shooting, the driver replied that it was "'the black male running down the sidewalk of this side of the street in the tan Carhartt.'" Sarka saw only one man in the group of people running on the sidewalk who was wearing a tan Carhartt jacket; the man was later identified as Henderson.

Sarka yelled at Henderson, "'Police, stop.'" Henderson made eye contact with Sarka but then turned and continued running. Sarka chased Henderson, first in his cruiser and then on foot. As Sarka was chasing Henderson on foot, another police cruiser came toward Henderson which caused him to change direction. Sarka saw Henderson pull an object that looked like a gun out of his waistband or pocket and throw the object under a vehicle that was parked on the street. Sarka continued to chase Henderson and was joined by another officer. The two eventually tackled Henderson and hand-cuffed him. Sarka turned Henderson over to another officer, Fred Hiykel. Sarka returned to the place where he had seen Henderson throw the object under a vehicle. The object proved to be a gun.

Hiykel responded to Sarka's "'Shots were fired'" call and arrived just as Sarka took Henderson into custody. Hiykel escorted Henderson to his police cruiser. Hiykel searched Henderson and found a handgun in his pocket. He removed the gun and put it in a plastic evidence bag. Hiykel put Henderson into the back of his cruiser and drove him to police headquarters. In the interview room, Hiykel removed other personal property from Henderson's person and placed the property in an evidence bag.

### 3. Search of Cell Phone

Dave Schneider was one of the homicide detectives from the Omaha Police Department (OPD) assigned to investigate the shootings. One of Schneider's duties was to obtain a search warrant for a cell phone that was among the items of personal property taken from Henderson upon his arrest. Schneider himself had not come into contact with the cell phone, but he knew that other officers had turned the cell phone on to obtain its serial number and telephone number. Schneider testified that the other officers had placed the cell phone into "airplane mode" so that the cell phone could not be remotely accessed for the purpose of deleting data. Schneider prepared an affidavit and application for issuance of a warrant to search the contents of the cell phone. In the affidavit and application, Schneider generally requested a warrant to search "[a]ny and

all information" contained on the cell phone. He specifically listed contacts, cell phone call lists, text messages, and voice-mails, and he also requested "any other information that can be gained from the internal components and/or memory Cards." As grounds for the issuance of the warrant, Schneider asserted that Henderson was a suspect in a shooting and that the cell phone was in Henderson's possession when he was arrested. The county court for Douglas County issued the requested search warrant on February 18, 2012.

The search of the cell phone was conducted by another detective, Nick Herfordt, during the afternoon of February 18, 2012. Herfordt downloaded information from the cell phone, including the contact list, call history, and text messages. Included in the information downloaded was a series of text messages exchanged between the cell phone and another number between 2:34 a.m. and 3:11 a.m. on February 18. Messages coming from the other number included two which stated, "That Nigga that stab Jb up here" and "After hour on harney downtown." Messages sent from the searched cell phone included two which stated, "On my way keep close eye" and "Im out side wat up?" Other messages appear to indicate that the two persons exchanging the messages were attempting to meet up with one another outside the location mentioned in earlier messages. Herfordt also found a picture that was used as "wallpaper," or the background on the cell phone's screen. The picture depicted a man, and at trial, witnesses identified the man in the picture as Levering.

Prior to trial, on June 13, 2012, Henderson filed a motion to suppress evidence obtained from the search of the cell phone. He asserted, inter alia, that the affidavit supporting the request for the search warrant "did not contain sufficient information to establish probable cause to believe a crime or evidence of a crime would be found on [Henderson's] cellular telephone." The district court held a hearing on the motion to suppress on August 16. However, before the court ruled on the motion to suppress, Schneider obtained a second warrant to search the cell phone.

The affidavit Schneider submitted to the county court in support of the second warrant included the same information

that had been included in the request for the first warrant, but there was additional language stating:

> In Affiant Officers [sic] experience and training as a detective it is known that suspects that we have had contact with use cell phones to communicate about shootings that they have been involved it [sic], before, during, and afterwards. The communication can be though [sic] voice, text, and social media, to name a few.

The county court issued a second search warrant based on the new affidavit on September 14. On September 20, Herfordt searched the contents of the cell phone a second time.

On November 13, 2012, Henderson filed a motion to suppress evidence obtained from the second search of the cell phone, and the district court held a hearing on the motion on November 19. The court entered an order on January 17, 2013, overruling Henderson's motion to suppress evidence obtained from the second search. The court agreed with Henderson's argument that the affidavit submitted in support of the first search warrant issued on February 18, 2012, did not sufficiently state why a search of the cell phone would produce evidence relevant to the crimes for which Henderson was arrested and that therefore, there was not probable cause to support the first search warrant. But the court continued that no warrant was necessary because, in its view, the search of the cell phone, which was found on Henderson at the time of his arrest, was a valid warrantless search incident to his arrest. The court stated that because no warrant was needed to conduct the search, issues regarding the validity of the second search warrant were moot.

Notwithstanding its conclusion that a warrant was not required, the district court addressed the warrant issue "in the event it is eventually determined that the Court is in error on that issue" regarding the need for a warrant. The court rejected Henderson's argument that the second warrant was an attempt to rehabilitate the deficiencies of the first warrant and that the second warrant was tainted by the execution of the first warrant. The court concluded that "there is little or no evidence that 'but for' the execution of the first search warrant the State

would not have searched the cellular telephone using the properly issued second search warrant."

After Henderson filed a motion to reconsider the ruling on the motion to suppress, the court held another hearing focused on the validity of the second search warrant. On February 7, 2013, the court entered an order overruling the motion to reconsider and suppress evidence obtained from the second search. In the order, the court specifically determined that the affidavit offered in support of the second search warrant, which included the additional language quoted above, established probable cause to search the cell phone. The court concluded that the second search warrant was properly issued and executed.

### 4. Issues Prior to and During Trial

Prior to trial, OPD filed a motion for a protective order against a subpoena duces tecum that had been served by Henderson. The subpoena requested the keeper of OPD's records to appear at trial and provide a copy of gang files related to Henderson and to an individual known as JB. At a hearing on the motion, OPD argued that the files were confidential and subject to confidentiality restrictions imposed by OPD and the federal government. OPD further asserted that disclosure of such information could jeopardize its efforts in monitoring gang activity.

At the hearing on OPD's motion, the court also considered motions in limine Henderson had filed seeking to preclude the State from adducing evidence regarding gang affiliations. At this hearing, the State represented that it had not seen any of the OPD files and that it did not intend to introduce any evidence at trial regarding gang affiliation. The court granted OPD's motion for a protective order but indicated that it might change its ruling if at trial the State introduced evidence to establish that the "JB" referred to in the text message found on Henderson's cell phone was Levering and if such evidence was derived from information in the OPD gang files.

Herfordt testified at trial. When the State began to question Herfordt regarding his search of the cell phone and the

evidence he obtained from the search, Henderson made a foundation objection that a proper chain of custody had not been established for the cell phone. The court initially sustained the foundation objection, and the State recalled Hiykel as a witness regarding the chain of custody. Hiykel testified generally that after Henderson's arrest, he took all items that Henderson had on his person and put them into an evidence bag; however, Hiykel did not specifically recall taking a cell phone. Herfordt then returned to the stand, and upon questioning by the State, identified the cell phone as the one that he booked into property in connection with the present case. When the State offered the cell phone into evidence, Henderson objected based on foundation and the court admitted the cell phone into evidence over the objection.

Henderson also renewed his objections that the evidence was obtained in violation of his Fourth Amendment rights against unreasonable searches. The court overruled the objections based on its prior alternative rulings that the search of the cell phone was valid as a warrantless search incident to Henderson's arrest, that the second search warrant was valid and supported by probable cause, and that the search conducted pursuant thereto was legal.

Herfordt testified regarding what he found in his search of the cell phone. He testified that the background picture that came up on the screen when the cell phone was turned on "was that of someone known to be Jimmy Levering." Henderson objected based on foundation, and the court sustained the objection. The State attempted to provide foundation by asking Herfordt how he knew the identity of the person in the picture. Herfordt replied, "I worked Northeast Omaha when I was in uniform, and Jimmy Levering, I guess, was kind of an infamous gang member . . . ." Henderson immediately moved for a mistrial based on Herfordt's reference to gang affiliations, noting that the State had agreed in connection with Henderson's pretrial motion in limine that it would not introduce evidence regarding gang affiliations. The court overruled the motion for a mistrial, and the State continued questioning Herfordt regarding how he knew the person in the picture was Levering. Herfordt testified that he had not had

personal contact with Levering but had seen pictures of him in the course of previous investigations. The State offered the picture taken from the cell phone into evidence, and the court overruled Henderson's objections based on foundation and Fourth Amendment grounds.

Herfordt also testified regarding the text messages that he found on the cell phone. Henderson objected to evidence regarding text messages on the basis that the evidence was inadmissible hearsay. The State argued that the evidence was not being offered to prove the truth of the matter asserted but to show the effect the messages had on Henderson. The court overruled the hearsay objection.

The State also called Ramone Narvaez as a witness. Narvaez was a correctional officer from a federal penitentiary in Florida. Narvaez testified that in December 2009, Levering, who was then an inmate at the penitentiary, ran into his office followed by three other inmates who started punching Levering. Narvaez testified that he and other officers broke up the fight and that Levering was taken to the medical unit because he was bleeding from his torso. Narvaez testified that the last name of one of the other inmates was "Voss" but that he did not know Voss' first name. Narvaez was shown the picture that was taken from the cell phone, and he testified that the person in the picture was the same person who had been involved in the incident in Florida.

After the cross-examination and redirect testimony of Narvaez were completed, Henderson moved for a mistrial or, in the alternative, for an order striking Narvaez' testimony on the basis that he was not able to establish that the "Voss" to whom he referred in his testimony was the "Matthew Voss" who was a victim in this case and that he had not testified that Levering was stabbed. Henderson argued that without establishing these facts, Narvaez' testimony was unfairly prejudicial. The court overruled the motion for a mistrial and the motion to strike the testimony.

The State also called Omaha Police Det. Christopher Perna as a witness. Perna was shown the picture from the cell phone, and he identified that person as Levering. Perna testified that he had personally interviewed Levering in the course

of other investigations. Perna also testified that he had briefly interviewed a "Matthew Voss" on March 31, 2010, at a federal penitentiary in Florida and that Levering's name "came up" in the interview. Perna was shown a picture of the victim in this case, and Perna testified that the person in the picture was the "Matthew Voss" he had interviewed in Florida.

### 5. Convictions and Sentences

The jury found Henderson guilty of first degree murder, attempted first degree murder, two counts of use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. The court sentenced Henderson to imprisonment for life for first degree murder, for 50 to 50 years for attempted first degree murder, for 20 to 20 years on each of the convictions for use of a deadly weapon, and for 20 to 20 years on the conviction for possession of a deadly weapon by a prohibited person. The court ordered the sentences to be served consecutively.

Henderson appeals his convictions.

## III. ASSIGNMENTS OF ERROR

Henderson claims that the district court erred when it (1) overruled his motion to suppress evidence obtained from the search of the cell phone; (2) admitted evidence obtained from the allegedly illegal search of the cell phone, including text messages and pictures; (3) admitted evidence of items found on the cell phone over his foundation objections; (4) admitted evidence of text messages over his hearsay objections; (5) granted OPD's motion for a protective order relating to gang files; (6) denied Henderson's motion for a mistrial based on Herfordt's testimony that Levering was "an infamous gang member"; (7) denied his motion to strike Herfordt's testimony for lack of foundation identifying Levering as the person in the cell phone picture; and (8) overruled his motion for a mistrial and his motion to strike Narvaez' testimony.

## IV. STANDARDS OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.

Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[2-4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

[5] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

[6] Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion. *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012).

[7] Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *Ramirez, supra*.

## V. ANALYSIS

### 1. District Court Did Not Err When It Overruled Henderson's Motion to Suppress Evidence Obtained From Search of Cell Phone

Henderson claims that the district court erred when it overruled his motion to suppress evidence obtained from

the search of his cell phone and when it admitted evidence obtained from the allegedly illegal search of the cell phone. We determine that the search was not justified as a warrantless search incident to arrest and that there was probable cause to issue the warrant, but that the scope of the search warrant lacked particularity and was too broad to protect privacy interests in the contents of the cell phone. However, we conclude that the search was conducted in good faith reliance on the warrant and that therefore, the district court did not err when it overruled the motion to suppress and when it admitted evidence obtained from the search.

### (a) Search Was Not Justified as
### Search Incident to Arrest

When it overruled the motion to suppress, the district court determined that because the cell phone was found in a search of Henderson's person at the time he was arrested, subsequent searches of the contents of the cell phone were proper as searches incident to an arrest. Contrary to the district court's reasoning, we conclude that the searches of the cell phone contents were not justified as searches incident to arrest.

[8] The U.S. Supreme Court recently held in *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), that the police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested. The Court reasoned that a search of digital information on a cell phone does not further the government interests identified in other cases authorizing the search of a person and his or her effects incident to an arrest, which interests include addressing the threat of harm to officers and preventing the destruction of evidence. The Court stated that such interests must be balanced against the individual privacy interests at stake.

In *Riley*, the Court determined that the digital data stored on a cell phone did not present a risk of being used as a weapon to harm an arresting officer and that the potential risk of destruction of evidence could be prevented by seizing and securing the cell phone itself. The Court further determined that as compared to the diminished privacy interests involved

in the physical search of an arrestee, the search of data on a cell phone implicated substantial privacy interests. The Court noted that cell phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person" because they collect in one place distinct types of information that could reveal significant knowledge regarding an individual's private interests and activities. 134 S. Ct. at 2489. The Court further noted that such a search could extend well beyond evidence in physical proximity to the arrestee because data viewed on a cell phone could be stored on a remote server. The Court acknowledged that exigent circumstances could justify a warrantless search but held that as a general matter, the warrantless search of a cell phone seized from an arrestee is not justified as a search incident to an arrest, and that before searching a cell phone, the police must get a warrant. For completeness, we add that based on the facts recited, we understand the relief actually extended to the defendant in *Riley* was limited to data stored on the seized cell phone, and not explicitly extended to data stored in the cloud network or accessible from another device.

The present appeal was pending before this court when the opinion in *Riley* was filed on June 25, 2014. The parties were asked to comment on the application of *Riley* to this case. The State concedes that *Riley* would be applicable to any case that was on direct review when it was decided. We agree that *Riley* applies in this case. See *State v. Castaneda*, 287 Neb. 289, 314, 842 N.W.2d 740, 759 (2014) ("'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past'") (quoting *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)).

In the present case, there is no indication that there were exigent circumstances that required the police to search the contents of Henderson's cell phone without taking the time to obtain a warrant. To the contrary, any argument that there were exigent circumstances would likely fail in light of the fact that the police actually waited until they obtained a

warrant before they searched the cell phone. We therefore conclude that under the U.S. Supreme Court's holding in *Riley*, the district court erred when it concluded that the search of Henderson's cell phone was justified or necessitated as a search incident to arrest. Because a search of the contents of Henderson's cell phone required a warrant, we must consider whether the evidence Henderson sought to be suppressed was obtained in a search that was supported by a valid warrant.

### (b) Validity of Search Warrants

In the event the district court was wrong in its conclusion that the searches of the cell phone were justified as warrantless searches incident to arrest, it considered whether there was a valid search warrant in this case. The court concluded that there was not probable cause to support the first search warrant, but then concluded in its February 7, 2013, order that the second search warrant was supported by probable cause and that "the search warrant was properly issued and executed."

The Fourth Amendment provides that warrants may not be granted "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution similarly provides that "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Neb. Const. art. I, § 7. Although the district court found probable cause to support a search warrant, it did not analyze whether the scope of the warrant as issued met the particular requirement. We conclude that although there was probable cause to support issuance of both warrants, the warrants as issued were too broad to meet the particularity requirement of the Fourth Amendment.

### (i) Probable Cause

[9,10] We first consider whether the affidavits submitted by the police established probable cause for issuance of the search warrants. In reviewing the strength of an affidavit submitted

as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013). The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012).

In the affidavits filed in support of both the first and second warrants in this case, Schneider stated as grounds for the issuance of a search warrant that police had been dispatched to the scene where two victims had suffered gunshot wounds, that witnesses had seen two men firing at a victim, that an officer saw two men running from the scene, that one of the two men was later identified as Henderson, that the officer chased Henderson and saw Henderson throw a handgun under a vehicle, and that officers searched Henderson and found a handgun in his pocket and a cell phone in his possession. Schneider stated that the warrant for the search of the cell phone was requested to assist in a homicide investigation. In the affidavit submitted to obtain the second warrant, Schneider added language stating that in his experience as a detective, he knew that suspects used cell phones to communicate about shootings they have been involved in before, during, and after the shootings and that such communications could be through, inter alia, voice or text messages or social media.

We determine that both affidavits provided the county court a substantial basis to find that probable cause existed to search the contents of the cell phone. The affidavits established that two victims had been shot, that two men committed the shootings, that Henderson was one of two men seen running from the scene, that Henderson threw one gun under a vehicle, and that he had another gun in his possession. The allegations established a fair probability that Henderson was involved in the shootings. The allegations also indicated that

two people were shooters. Because Henderson was working with at least one other person to commit the shootings, it is reasonable to infer that the cell phone that was in his possession was used to communicate with others regarding the shootings before, during, or after they occurred. We believe that the court that issued the search warrant could have reached this inference without the additional allegations that cell phones are used in relation to crimes found in the second affidavit. The court therefore had a basis to determine that the cell phone would contain evidence regarding the shootings and that probable cause existed to support issuance of the search warrants.

### (ii) Particularity

[11] Although there was probable cause that a search of the cell phone would provide relevant evidence, we do not think that such probable cause justified the scope of the search warrants actually issued by the county court in this case. We have noted that in addition to the requirement of probable cause, the Fourth Amendment contains a particularity requirement. See *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). As noted above, the Fourth Amendment states in part that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." We stated in *Sprunger* that "[t]he Founding Fathers' abhorrence of the English King's use of general warrants—which allowed royal officials to engage in general exploratory rummaging in a person's belongings—was the impetus for the adoption of the Fourth Amendment. Simply put, the Fourth Amendment prohibits 'fishing expeditions.'" 283 Neb. at 539, 811 N.W.2d at 243. In *Sprunger*, we observed that allowing the unfettered search of a computer's contents would allow officers to go "rummaging through a treasure trove of information." 283 Neb. at 540, 811 N.W.2d at 244. We further stated, "'"[T]he modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs."'"

*Id*. at 540-41, 811 N.W.2d at 244 (quoting *Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010), quoting *U.S. v. Otero*, 563 F.3d 1127 (10th Cir. 2009)).

The concerns we noted with regard to the vast amount of data stored on computers in *Sprunger* were echoed by the U.S. Supreme Court with regard to cell phones in *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). As we have quoted above, the Court in *Riley* stated, "Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." 134 S. Ct. at 2489. The Court in *Riley* noted that such quantitative and qualitative differences included the "immense storage capacity" of cell phones, their "ability to store many different types of information," their functioning as "a digital record of nearly every aspect of their [owners'] lives," and their ability to "access data located elsewhere." 134 S. Ct. at 2489-90.

[12] Given the privacy interests at stake in a search of a cell phone as acknowledged by the Court in *Riley* and similar to our reasoning in *Sprunger*, we think that the Fourth Amendment's particularity requirement must be respected in connection with the breadth of a permissible search of the contents of a cell phone. Accordingly, we conclude that a warrant for the search of the contents of a cell phone must be sufficiently limited in scope to allow a search of only that content that is related to the probable cause that justifies the search.

[13,14] It has been observed that the particularity requirement of the Fourth Amendment protects against open-ended warrants that leave the scope of the search to the discretion of the officer executing the warrant, or permit seizure of items other than what is described. *U.S. v. Clark*, 754 F.3d 401 (7th Cir. 2014). A warrant satisfies the particularity requirement if it leaves nothing about its scope to the discretion of the officer serving it. *Id*. That is, a warrant whose authorization is particular has the salutary effect of preventing overseizure and oversearching.

In this case, both warrants containing identical language were defective for failing to meet the particularity requirement of the Fourth Amendment. The warrants did not refer

to the specific crime being investigated or to the type of information encompassed by their authorization. The warrants authorized a search of "[a]ny and all information." Although the warrants listed types of data, such as cell phone calls and text messages, they concluded with a catchall phrase stating that they authorized a search of "any other information that can be gained from the internal components and/or memory Cards." We conclude that the search warrants in this case did not comply with the particularity requirement because they did not sufficiently limit the search of the contents of the cell phone.

We are aware that there is currently a discussion in state and federal courts regarding whether a court issuing a warrant has the authority to—or should—set forth a protocol specifying how the search of digital data should be conducted. See, e.g., *U.S. v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) (Kozinski, Chief Judge, concurring; Kleinfeld, Fletcher, Paez, and Smith, Circuit Judges, join); *In re Search Warrant*, 193 Vt. 51, 71 A.3d 1158 (2012). See, also, Orin S. Kerr, *Ex Ante Regulation of Computer Search and Seizure*, 96 Va. L. Rev. 1241 (2010), and Paul Ohm, *Massive Hard Drives, General Warrants, and the Power of Magistrate Judges*, 97 Va. L. Rev. in Brief 1 (2011). In a related area, we are also aware that certain jurisdictions have adopted statutes that require that authorizations to conduct electronic surveillance include procedures for minimizing the capture of nonpertinent information. E.g., N.Y. Crim. Proc. § 700.30(7) (McKinney 2009). However, the warrants in the present case did not set forth such a protocol and we need not consider whether such a protocol is required or even proper.

The parameters of how specific the scope of a warrant to search the contents of a cell phone must be will surely develop in the wake of *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). In the present case, because the search warrants allowed a search of "[a]ny and all" content, their scope was clearly not sufficiently particular and therefore the warrants did not meet the Fourth Amendment particularity requirement and were invalid for this reason.

### (iii) Good Faith

The State contends that even if the search warrants were not valid, exclusion of the evidence is not required because of the good faith exception. We agree that application of the good faith exception is appropriate in this case.

That a Fourth Amendment violation occurred does not necessarily mean that the exclusionary rule applies. *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands. The U.S. Supreme Court has held that for the exclusionary rule to apply, the benefits of its deterrence must outweigh its costs. *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Recognizing that the benefits of deterrence often do not outweigh the social costs of exclusion, the U.S. Supreme Court created the good faith exception to the exclusionary rule. *Id*.

[15] The good faith exception provides that evidence seized under an invalid warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant. Nevertheless, evidence suppression will still be appropriate if one of four circumstances exists: (1) The magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard for the truth; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. See *Sprunger, supra*.

[16,17] We have said that the "'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite a magistrate's authorization.'" *Id*. at 542, 811 N.W.2d at 245. Officers are assumed to "'have a reasonable knowledge of what the law prohibits.'" *Id*. In assessing the good faith of an officer's conducting a search under a warrant, an appellate court must look to the totality of the

circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit. *Id*.

In connection with the inquiry just noted, there is no indication in this case that the officers would reasonably have known of the defects in the warrants as authorized. Further, there is no indication that the police used the warrant to conduct a search for evidence other than that related to the shootings investigation. The evidence that the officers obtained and that the State offered at trial was limited to evidence that was relevant to the shootings under investigation and that would have been found pursuant to a properly limited warrant.

Circumstances that might require suppression despite a good faith execution are not present here. There is no indication that the issuing court was misled by false information in the affidavit, that the issuing court wholly abandoned its judicial role, or that probable cause was obviously lacking. As we discussed above, the affidavits provided probable cause and, therefore, it was not unreasonable for officers executing the warrants to presume them to be valid. And although the warrants contained language that made them too broad to satisfy the particularity requirement, they also contained references to specific items that did not make the warrants so facially deficient that the officers could not reasonably presume them to be valid and the search legal. We conclude that the good faith exception applies to this case.

### (c) Conclusion

We determine that although the scope of the search warrants was not properly limited in compliance with the particularity requirement of the Fourth Amendment, the issuance of the warrants was reasonable and the warrants were carried out in good faith. We further note that the State did not offer evidence that would not have been discovered pursuant to a sufficiently limited search warrant. Although our reasoning differs from that of the district court, we conclude that the district court did not err when it overruled the motions to suppress or when it admitted evidence obtained from the search over Henderson's Fourth Amendment objections.

## 2. District Court Did Not Err When It Overruled Henderson's Other Objections to Admission of Evidence Obtained From Search of Cell Phone

In addition to his claim that the district court erred when it admitted evidence obtained from the search of the cell phone because the search was illegal, which assertion we rejected above, Henderson claims that the court erred when it admitted evidence obtained from the search of the cell phone over other objections based on foundation and hearsay. We conclude that the district court did not err when it rejected Henderson's objections and admitted the evidence.

### (a) Foundation and Chain of Custody

Henderson claims that the district court erred when it admitted evidence obtained from the search of the cell phone because there was not sufficient foundation to establish that the cell phone that was searched was taken from Henderson's person at the time of his arrest. We reject this claim and conclude that there was adequate foundation for admission of the cell phone and evidence of its contents.

Henderson notes that Hiykel, the officer who searched Henderson upon his arrest, testified at trial that he did not specifically recall removing a cell phone from Henderson's person. The district court sustained Henderson's initial objection to evidence of the contents of the cell phone based on foundation and chain of custody. But the court received the evidence after Hiykel provided additional testimony to the effect that he searched Henderson's person, placed Henderson's personal items into a bag, and watched Henderson and his personal items until another officer took over observation.

[18-20] Where objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing the initial possession of the object or article to its final custodian; and if one link in the chain is missing, the object may not be introduced in evidence. *State v. Glazebrook*, 282 Neb. 412, 803 N.W.2d 767 (2011). Proof that an exhibit remained in the custody of law enforcement officials is sufficient to prove a chain of possession and is sufficient

foundation to permit its introduction into evidence. *State v. Tolliver*, 268 Neb. 920, 689 N.W.2d 567 (2004). Whether there is sufficient foundation to admit physical evidence is determined on a case-by-case basis. *Glazebrook, supra*.

We note that in addition to Hiykel's testimony regarding his search and removal of items from Henderson's person, the State provided the testimony of another police officer who took over observation of Henderson and his personal items when Hiykel went off duty. That officer testified that when he relieved Hiykel, the belongings he observed included a coat and an evidence bag containing personal items. He testified that the items inside the bag included a cell phone. The cell phone was eventually retrieved from the evidence bag by Herfordt, who searched the contents and testified at trial regarding the search.

The testimony indicates that the cell phone and the other contents of the evidence bag remained in the possession of law enforcement officials after their initial removal from Henderson's person, including during Herfordt's subsequent search of the contents. Such evidence provides adequate foundation for the chain of custody of the cell phone. We conclude that the district court did not abuse its discretion when it determined that there was sufficient foundation regarding the chain of custody of the cell phone. We reject this assignment of error.

### (b) Hearsay

Henderson also claims that the district court erred when it admitted evidence of the content of the text messages over his hearsay objections. We reject this claim.

Henderson filed a motion in limine prior to trial seeking to preclude the State from introducing evidence of the content of text messages found on the cell phone because the text messages were inadmissible hearsay. The district court overruled the motion in limine based on the State's argument that the evidence was not being offered for the truth of the matters asserted but instead in order to show the impact of the messages on Henderson's state of mind, which was relevant to proving premeditation with respect to the charge of the first degree murder

of Voss. The district court also overruled Henderson's renewed hearsay objections during the trial.

[21] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2008). Under Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2008), hearsay is not admissible unless a specific exception to the hearsay rule applies.

The text messages in this case were not admitted for the truth of the statements contained therein but instead for the purpose of showing their effect on Henderson. The State used the messages to show that Henderson believed that an individual who was responsible for an attack on an acquaintance of his was at the location where the shootings would eventually occur and that Henderson coordinated with other individuals to go to that place in order to retaliate. The messages were not used to establish that the individual was at that location or that the individual had attacked Henderson's acquaintance. Instead, the messages were offered to support the State's theory that Henderson went to the location for the purpose of retaliating against the person who assaulted his acquaintance, which was relevant to the premeditation element of first degree murder. We therefore conclude that because the evidence was not hearsay, the district court did not err when it admitted the evidence over Henderson's hearsay objection.

With regard to this assignment of error, Henderson also argues that the State erroneously asserted that the text messages met an exception to the hearsay rule as statements of coconspirators. Because the evidence was not hearsay, we need not consider whether the evidence would have met a hearsay exception.

Finally, Henderson argues in connection with this assignment of error that the district court erroneously rejected his proposed limiting instruction with regard to the text messages. We need not consider this argument because Henderson did not assign error to the court's rejection of the instruction. We do not consider errors which are argued but not assigned.

*State v. Duncan*, 278 Neb. 1006, 775 N.W.2d 922 (2009). We reject this assignment of error.

### 3. District Court Did Not Abuse Its Discretion With Respect to Discovery When It Granted OPD's Motion for Protective Order

Henderson claims that the district court erred when it granted OPD's motion for a protective order relieving it of producing files relating to gangs. We reject this assignment of error.

Henderson argues that the files were a proper subject for discovery because they might contain information that would affect the outcome of the trial. In particular, he asserts that the State planned to show that the "JB" referenced in the text messages was Levering and that information in the files might indicate that there were other individuals who were also known as JB, which information would be helpful to his defense. Henderson argues that the protective order infringed his right to present a complete defense.

The State argues in response that at trial, it did not introduce evidence, either from the OPD files or from other sources, to establish that "JB" was Levering. The State further contends that Henderson was free to introduce evidence to establish that "JB" was someone other than Levering, which he did not do, or to argue that the State never established that "JB" was Levering, which he did do in closing arguments.

[22] Discovery in a criminal case is generally controlled by either a statute or court rule. Thus, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion. *State v. Collins*, 283 Neb. 854, 812 N.W.2d 285 (2012). A defendant in a criminal proceeding has no general due process right to discovery. *Id*.

[23,24] Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013), *cert. denied* ___ U.S.

___, 134 S. Ct. 1899, 188 L. Ed. 2d 930 (2014). We have said, however, with respect to admission of evidence, that a defendant "'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Id*. at 996, 840 N.W.2d at 519 (quoting *Taylor v. Illinois*, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)). Similarly, a defendant does not have an unfettered right to discovery.

We conclude that the district court did not abuse its discretion with respect to Henderson's discovery of information contained in the OPD gang files. OPD had valid reasons to refrain from disclosing the information, and Henderson has failed to show how information contained therein was necessary or peculiarly helpful to his defense. As the State argues, the prosecution used no evidence from the files or from other sources to establish that "JB" was Levering.

With regard to a complete defense, if Henderson wanted to present evidence that "JB" referred to someone other than Levering, there likely would have been other sources better familiar with the intended meaning of the "JB" reference in the text message; any information in the gang files at best might only have shown that other people were known as JB and that one of those other persons *might* have been referenced in the text message. Furthermore, Henderson was able to argue and did so argue that the State did not prove that "JB" was Levering and that therefore, the reference in the text message may have been to someone else. The protective order did not limit Henderson's ability to present a complete defense.

The district court did not abuse its discretion with regard to discovery of the gang files, and Henderson has not shown that the court's rulings prevented him from presenting a complete defense. We reject this assignment of error.

### 4. District Court Did Not Abuse Its Discretion When It Overruled Henderson's Motion for Mistrial Based on Testimony Describing Levering as "infamous gang member"

Henderson next claims that the district court erred when it overruled his motion for a mistrial based on Herfordt's

comment that Levering was "an infamous gang member." We conclude that the district court did not abuse its discretion when it overruled the motion for a mistrial.

[25,26] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013). Instead, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id*.

When the State questioned Herfordt regarding what he found in his search of the cell phone, Herfordt testified that the background picture that came up on the screen when the cell phone was turned on "was that of someone known to be Jimmy Levering." Henderson objected based on foundation, and the court sustained the objection. The State then attempted to provide foundation by asking Herfordt how he knew the identity of the person in the picture. Herfordt replied, "I worked Northeast Omaha when I was in uniform, and Jimmy Levering, I guess, was kind of an infamous gang member . . . ." Henderson immediately moved for a mistrial based on Herfordt's reference to gang affiliations, noting that the State had agreed in connection with Henderson's pretrial motion in limine that it would not introduce evidence regarding gang affiliations. The court overruled the motion for a mistrial. In challenging this ruling on appeal, Henderson reasserts contentions he made at trial and also offers some additional arguments.

Henderson contends that the reference to Levering as "an infamous gang member" was a violation of the order on the motion in limine precluding evidence of gang affiliation, that the motion for a mistrial should have been granted, and that the damaging effect could not be removed by admonition to the jury. With regard to Henderson's argument that the damaging effect of the reference could not be removed by

admonition to the jury, the record shows that the court over-ruled Henderson's motion for a mistrial and the State resumed questioning Herfordt. Henderson did not ask the court for an admonition, and furthermore, the court asked Henderson whether he was moving to strike Herfordt's last answer, which contained the gang reference to which Henderson replied, "Not at this time, Judge, no." We believe that any damage caused by the lack of an admonition was the result of Henderson's failure to request such admonition.

It appears from the record that the State was not expect-ing Herfordt to make the gang reference in his answer and that the questioning by the State was not directed at eliciting such response. The comment does not appear to be the result of intentional misconduct by the prosecution. Upon resuming questioning of Herfordt, the State cautioned Herfordt to avoid testifying about his knowledge of any affiliations the person in the picture may have had. Herfordt's gang reference was an isolated comment, the State did not present other evidence of gang affiliations, and the State did not offer evidence that Henderson had a gang affiliation.

We conclude that the court did not abuse its discretion when it overruled the motion for a mistrial, and we reject this assign-ment of error.

### 5. District Court Did Not Err When It Overruled Henderson's Motion to Strike Herfordt's Identification of Person in Cell Phone Picture

Henderson also claims that the district court erred when it denied his motion to strike Herfordt's testimony identifying Levering as the person in the cell phone picture after Herfordt admitted he had not personally met Levering. We find no merit to this assignment of error.

After the court overruled the motion for a mistrial related to Herfordt's comment regarding gang affiliation as discussed above, the State resumed questioning Herfordt to provide foun-dation for his identification of the person in the picture found on Henderson's cell phone. Herfordt testified that he had not personally had contact with the person in the picture but that

he had seen pictures of that person in connection with previous investigations and in news reports. Henderson renewed his objection that the State had not provided foundation for Herfordt's identification of the person in the picture.

We note that two other witnesses—Narvaez and Perna—also identified the person in the picture as Levering. Therefore, whether or not there was sufficient foundation to admit Herfordt's testimony identifying the person in the picture, even if it was error to admit such testimony, it was harmless error because it was cumulative of other properly admitted evidence. See *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

### 6. District Court Did Not Err When It Overruled Henderson's Motions to Strike and for Mistrial Related to Narvaez' Testimony

Finally, Henderson claims that the district court erred in connection with its rulings regarding Narvaez' testimony. Specifically, the court overruled Henderson's motion for a mistrial and his motion to strike Narvaez' testimony. We reject this assignment of error.

Narvaez, a correctional officer from a federal penitentiary in Florida, testified regarding an altercation between an inmate named "Jimmy Levering," whom Narvaez identified as the subject of the picture found on Henderson's cell phone, and another inmate he identified as "Voss." Narvaez testified he did not know the first name of the inmate he identified as "Voss." The court overruled Henderson's motion for a mistrial and his motion to strike related to this testimony.

Henderson argues that a mistrial should have been declared or that Narvaez' testimony should have been stricken because Narvaez did not identify Voss, the murder victim in this case, as the "Voss" who was involved in the altercation in Florida and because there was no evidence other than Narvaez' testimony to establish that Levering was involved in the altercation. Henderson argues that because of these failings, Narvaez' testimony was not relevant and was unfairly prejudicial.

Although Narvaez did not know the first name of the person he identified as "Voss," another witness, Perna, testified that he had visited "Matthew Voss" in the prison in Florida, and Perna identified the murder victim in this case as the "Voss" he visited in Florida. Perna also testified that Levering was discussed during his conversation with "Voss" in Florida.

Narvaez' testimony was relevant to the State's case and was not unfairly prejudicial. The strength of the evidence was for the jury to assess. See *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014) (appellate court does not pass on credibility of witnesses or reweigh evidence because such are matters for finder of fact). The court did not abuse its discretion when it overruled Henderson's motion for a mistrial and his motion to strike Narvaez' testimony. We reject this assignment of error.

## VI. CONCLUSION

Henderson makes numerous assignments of error pertaining to pretrial and trial rulings, including the claim that the district court erred when it did not suppress evidence obtained from the search of his cell phone and admitted such evidence at trial. For the reasons explained above, we find no error and we affirm his convictions and sentences.

AFFIRMED.

———————

FEDERAL NATIONAL MORTGAGE ASSOCIATION, APPELLEE, v. BRIAN S. MARCUZZO AND DONNA M. MARCUZZO, APPELLANTS.

___ N.W.2d ___

Filed October 17, 2014.    No. S-13-929.

1. **Courts: Time: Appeal and Error.** Where no timely statement of errors is filed in an appeal from a county court to a district court, appellate review is limited to plain error.
2. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.