COURT OF APPEALS
DECISION
DATED AND FILED

November 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1942-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF29

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

EMIL L. MELSSEN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Lafayette County: R. ALAN BATES, Judge. *Pretrial order vacated and cause remanded with instructions*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1    GRAHAM, P.J.  Emil Melssen appeals a judgment of conviction, following a jury trial, for possession of methamphetamine with intent to deliver, maintaining a drug trafficking place, and possession of drug paraphernalia. On

appeal, he argues that the evidence was insufficient to sustain his convictions on the first two counts, and he challenges the circuit court's pretrial order that denied his motion to suppress evidence obtained in the execution of two search warrants. The first warrant authorized a search of the contents of Melssen's smartphone, and evidence found in that search provided the basis for the second warrant, which authorized a search of Melssen's residence. Melssen asked the circuit court to suppress evidence obtained in these searches because, he argued, the warrant to search his smartphone was overly broad and not supported by probable cause.[1]

¶2      We conclude that there was sufficient evidence presented at trial to sustain Melssen's convictions, but that the circuit court erred with respect to the pretrial order denying the motion to suppress.

¶3      More specifically, we conclude that the warrant to search Melssen's smartphone—which authorized officers to search virtually all of the messages, images, search terms, passwords, correspondence, credit card bills, telephone bills, digital artifacts, and incoming and outgoing telephone numbers and call details stored on the smartphone—violated the Fourth Amendment because it was overbroad and not carefully tailored to its justifications. The warrant application did not establish probable cause that Melssen was involved in the trafficking or distribution of controlled substances. At most, it established probable cause that Melssen had committed a battery on a specific date, and also established probable cause that evidence related to the battery would be found in a limited search of the call logs and communications on the smartphone over a limited period of time.

---

[1] The warrants were issued by the Honorable Duane S. Jorgenson, who also issued the order denying Melssen's motion to suppress. The Honorable R. Alan Bates presided over the trial and the sentencing phase of this case.

2

The warrant application did not establish probable cause for the broad search of the smartphone's contents that the warrant authorized.

¶4 Although we conclude that the warrant permitted an unconstitutional search of the smartphone, we do not determine whether any of the evidence found in the searches of Melssen's smartphone and residence should be suppressed or whether Melssen is entitled to a new trial. The exclusionary rule provides a basis for suppressing evidence obtained in violation of the Fourth Amendment, but that rule is not absolute, and the State argues that certain exceptions apply on these facts. Here, the circuit court denied the motion to suppress without allowing the parties to present evidence, and the existing record does not allow us to determine the potential applicability of any exception to the exclusionary rule. Therefore, we vacate the order denying the motion to suppress, and we remand to the circuit court for further proceedings. On remand, the circuit court should address whether any or all of the evidence found on Melssen's smartphone must be suppressed as a result of the Fourth Amendment violation; whether the evidence obtained in the search of Melssen's residence must be suppressed as a result of the court's determinations about the evidence found in the search of his smartphone; and whether Melssen is entitled to a new trial.

## BACKGROUND

¶5 The drug and paraphernalia charges that are the subject of this appeal arose from a police investigation into a physical altercation that took place in Lafayette County on May 25, 2021. The altercation was between Melssen and "Y.Z.," and it occurred outside of a residence occupied by Y.Z.'s girlfriend,

"A.B."[2]   The investigation led to the charges in this case, and it also led to Melssen's conviction for substantial battery and disorderly conduct in a separate case, Lafayette County Case No. 2021CF26 (the "battery case").[3]

¶6      On the afternoon of May 25, 2021, A.B. called the police to report that Y.Z. had stabbed Melssen.  In the ensuing investigation, officers collected physical evidence, interviewed A.B., Melssen, and Y.Z., and transported Melssen and Y.Z. to a hospital for medical care.  It appears that the officers initially considered Y.Z. to be the subject of their investigation, but their focus shifted to Melssen after they came to believe that he was more likely the aggressor and had committed a battery.  As discussed in greater detail below, officers used the information they obtained in their investigation into the battery to secure a warrant to search the contents of Melssen's smartphone.

¶7      When officers interviewed Melssen and A.B., both said that Y.Z. stabbed Melssen.  Officers also obtained information that Melssen and A.B. had been communicating by phone in the hours before and after the altercation. Specifically, Melssen told police that he used his smartphone to call A.B. earlier that day and A.B. told him that Y.Z. physically assaulted her the night before; and A.B. told police that Melssen had sent her multiple text messages from the ambulance after the altercation.

_____

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we refer to Y.Z. and A.B. using initials that do not conform to their actual names.  All references to the Wisconsin Statutes are to the 2023-24 version.

[3] Melssen also appealed his conviction in the battery case, *see State v. Melssen*, Appeal No. 2024AP1941-CR.  We initially consolidated the appeals of these two cases on our own motion, but after reviewing the briefing, we have determined that the appeals are best suited for separate dispositions.  Therefore, we have unconsolidated the appeals for purposes of disposition, and we are issuing a separate opinion that resolves Appeal No. 2024AP1941-CR.

¶8 After officers apprehended Y.Z., he gave a different account of the altercation. Specifically, Y.Z. told police that Melssen confronted and attacked him while he sat in his truck, and that Y.Z. jabbed Melssen in the arm with a pocketknife in an attempt to scare him off. During this interview, Y.Z. also suggested that Melssen and A.B. regularly communicated by smartphone and had some kind of involvement with controlled substances. Specifically, Y.Z. told police that Melssen and A.B. "communicate via text messages and phone calls" and "are constantly communicating about drugs and refer to drugs as 'groceries.'"

¶9 In the course of their investigation, officers seized a smartphone that belonged to Melssen and a smartphone that belonged to A.B. Detective Paul Klang then applied for a warrant to search the contents of Melssen's smartphone, which was identified as an "Apple iPhone with a black and gray protective case." As part of the warrant application, Klang swore to an affidavit that purportedly established probable cause that evidence related to "battery, domestic abuse incidents, and/or narcotic activity" would be found on the smartphone. The affidavit included detailed factual averments about the police investigation into the altercation between Melssen and Y.Z. By contrast, there were limited averments that could support a finding that anything of evidentiary value would be located on Melssen's smartphone.

¶10 A warrant-issuing judge analyzes probable cause based on the factual averments in the affidavits supporting a warrant application. *State v. Ward*, 2000 WI 3, ¶23, 231 Wis. 2d 723, 604 N.W.2d 517 (citation omitted); *see also State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756 (probable cause is based on the totality of the circumstances presented to the warrant-issuing judge). We therefore reproduce Klang's averments here, omitting details only if they are wholly irrelevant to the probable cause determination:

5

1.) Your affiant has been employed [by] the Lafayette County Sheriff's Office … since June, 2006. Your affiant's knowledge of the following information is based upon your affiant's investigative activities, your affiant's conversations and ongoing investigative efforts with Detective Sergeant Jerrett Cook regarding a stabbing investigation, … and other sworn law enforcement personnel with the Lafayette County Sheriff's Office.

2.) On Tuesday, May 25, 2021, at approximately 14:12 hours, [the] Dispatch Center received a 911 call of a stabbing at [A.B.'s address]. The 911 caller was identified as [A.B.] [A.B.] reported [that Melssen] was the stabbing victim and [Y.Z.] was reported as the offender. [A.B.] further stated another witness to the incident was [her friend]. It was reported [that] the offender, [Y.Z.], had fled the scene north bound on Bennett Road.

3.) [A]t approximately 14:27 hours, Deputy B. Gudgeon located [Y.Z.] [by a highway]. … Deputy Gudgeon took [Y.Z.] into custody without incident. [Y.Z.] had what appeared to be substantial injuries to his face. [Y.Z.] was transported to [a hospital] without incident for medical clearance. [Y.Z.] stated [that Melssen] had struck his vehicle and face with a baseball bat, so [Y.Z.] stabbed [Melssen] to stop [Melssen] from striking him.

4.) [A]t approximately 14:35 hours, [an ambulance] took [Melssen] to [a hospital] for his injuries. I followed the ambulance to the hospital. We arrived at [the hospital] at approximately 14:56 hours. I stood by in the emergency room while Doctors tended [to Melssen's] injuries. [Melssen] received an approximate 2 centimeters by 1 centimeter puncture wound to the left bicep. [Melssen] received stitches and was released from [the hospital] at approximately 15:50 hours.

5.) After [Melssen] was discharged from the hospital, I interviewed [him] in the parking lot …. I asked [Melssen] to tell me what had occurred today. [Melssen] stated [that] he called [A.B.] to see if she wanted to go to Dubuque with him. [A.B.] said yes and told [Melssen that] last night [Y.Z.] had struck her and pushed her against a wall. At approximately 14:10 hours, [Melssen] arrived at [A.B.'s] residence …. [Melssen] parked behind [Y.Z.'s] vehicle. [Melssen] exited his vehicle and [Y.Z.] "quickly" got into the driver's seat of his vehicle. [Melssen] walked up to [Y.Z.'s] driver's side window and asked what's going on. [Y.Z.] swung his right hand out the window and stabbed [Melssen] in the arm. [Melssen] described the

knife …. [Melssen] stated [that] he punched [Y.Z.] in the head 2 times in "self-defense." [Y.Z.] reversed his vehicle and struck [Melssen's] vehicle before he sped off.

6.) I followed up [with Melssen] and asked if he used any other weapons against [Y.Z.], like a tire iron, or baseball bat, or something else. [Melssen] denied using any weapons. [Melssen] again stated [that] he only punched [Y.Z.] 2 times. I asked [Melssen] if he was hostile towards [Y.Z.], because of what [A.B.] had told him; [Melssen] again denied provoking the altercation.

7.) After speaking with [Melssen], I telephoned Detective Sergeant Cook who was at the crime scene. I briefed [Cook] with [Melssen's] statements. [Cook] advised [that] the crime scene does not match [Melssen's] statements. [Cook] advised [that Y.Z.'s] initial version of events appeared more accurate. [Y.Z.] stated [that] he was trying to leave, when [Melssen] pulled up blocking his vehicle. [Y.Z.] grabbed a knife from his dash and put it in his lap. [Melssen] walked up to [Y.Z.'s] vehicle, grabbed [Y.Z.] by the shirt and punched [him] in his left eye area. [Y.Z.] grabbed the knife and "jabbed" it towards [Melssen]. [Melssen] backed up and yelled to [A.B.'s friend] for a bat. [A.B.'s friend] threw [Melssen] a bat and [Melssen] swung the bat against [Y.Z.'s] vehicle breaking the side mirror off. [Y.Z.] then fled the scene. A pipe was found near where the vehicle was parked.

8.) I arrested [Melssen] for battery and transported him to the Lafayette County Jail without incident. On [Melssen's] person at the time of arrest was an Apple iPhone and wallet containing $1,000 dollars.

9.) It should be noted during the time [Melssen] was in the ambulance and [at the hospital], he was repeatedly sending text messages to someone.

10.) I later learned from Detective Sergeant Cook, [A.B.] had reported [that Melssen] was sending her numerous text messages from the ambulance.

11.) [Y.Z.] had also reported [that A.B.] and [Melssen] constantly communicate via text messages and phone calls; [Y.Z.] further stated [that they] are constantly communicating about drugs and refer to drugs as "groceries."

12.) I know from prior law enforcement investigations, [that A.B.] is a drug user and [A.B.] has

been a resident at [her address] during sales of methamphetamine from the said address.

13.) Information obtained as a result of this and subsequent search warrants and/or subpoenas may reveal valuable information to establish a timeline for investigating officers to establish an accurate record of events.

Klang also averred that Melssen had confirmed that he owned the smartphone that was collected from him.[4]

¶11 The circuit court issued a search warrant authorizing police to search for certain items that might be "located and concealed" on Melssen's phone. The warrant described the items on the smartphone that officers were permitted to search for using the following language:

- Images or visual depictions in connection to battery, domestic abuse incidents, and/or narcotic activity

- Keywords, search terms, and other data indicating or tending to establish the searching for, receipt of, or possession of files containing information related to battery, domestic abuse incidents, and/or narcotic activity

- Digital contents related to the sharing of internet access over wireless networks …

- Manuals or other documents … which describe operation of items seized

- Items containing or displaying passwords, access codes, usernames, or other identifiers necessary to

---

[4] The affidavit contained additional factual averments by Klang, but none that provided any additional support for a probable cause determination. Instead, the additional averments addressed Klang's understandings about how smartphones work—that they can be encrypted, that a user's passcode or fingerprint might be required to unlock a smartphone, and that Melssen's passcode or fingerprint might be required to unlock his device. Klang further averred that a "complete forensic examination" of the smartphone might allow for the recovery of deleted files.

examine or operate items, software, or information seized

- Correspondence or other documents … pertaining to the possession, receipt, origin, or distribution of images involving battery, domestic abuse incidents, and/or narcotic activity

- Items that would tend to establish ownership or use of cellular telephones and … service accounts accessed to facilitate battery, domestic abuse incidents, and/or narcotic activity, to include credit card bills, telephone bills, correspondence, and other identification documents

- Digital artifacts of an evidentiary nature related to the aforementioned items which things may constitute evidence of a crime

- SMS/MMS[5] text, picture, video or audio messages

- Incoming and outgoing telephone numbers and/or call details

¶12 When police executed the warrant and searched Melssen's smartphone, they found incriminating text messages between Melssen and two individuals who were identified on the smartphone as "Becky" and "Bill's Girlfriend." The contents of the messages could support the reasonable inference that Melssen was involved in the distribution of controlled substances.

¶13 Police then applied for and obtained a second warrant to search the premises where Melssen resided. Klang again submitted an affidavit in support of the warrant. As grounds for probable cause, the affidavit relied primarily on the

---

[5] As we understand it, SMS stands for "short message service" and MMS stands for "multimedia messaging service," and both allow a person to send and receive messages from a smartphone.

text messages with "Becky" and "Bill's Girlfriend" that police found in the search of Melssen's smartphone.[6]

¶14    When officers executed the warrant for Melssen's residence, they recovered methamphetamine, drug paraphernalia, and other items consistent with drug distribution. Specifically, inside the home, officers found approximately one gram of methamphetamine, several glass pipes, a digital scale with white residue on it, clear pill capsules, a note about how to "convert a quarter pound into grams," more than ten firearms, and approximately two thousand dollars in cash. Additionally, officers found nearly twelve grams of methamphetamine in a locked vehicle that was parked on the property.

¶15    The State charged Melssen with possession with intent to deliver methamphetamine in an amount over ten grams; maintaining a drug trafficking place; and possession of drug paraphernalia. Prior to trial, Melssen moved to suppress the evidence obtained in the two searches.

¶16    In challenging the search of his smartphone, Melssen argued that the warrant application did not establish probable cause to believe that his smartphone contained evidence related to the battery of Y.Z., "domestic abuse incidents," or any "narcotic activity." According to Melssen, the only facts that could support an inference that his smartphone contained evidence of battery or domestic abuse

___

[6] As additional support for the warrant to search Melssen's residence, the affidavit also included a statement that Melssen made during police questioning in which he admitted that there was a device for smoking methamphetamine inside his residence. The circuit court determined that this statement must be suppressed and excised it from the search warrant application because, the court concluded, it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As we discuss below, *infra*, ¶¶60-61, the State does not challenge this determination on appeal; therefore, this determination stands.

were Melssen's admission that he called A.B. on the day of the altercation and A.B. told him that Y.Z. had assaulted her; observations by police that Melssen was texting someone from the ambulance and the hospital; and A.B.'s statement that Melssen texted her from the ambulance. Regarding "narcotic activity," Melssen argued that the averments in the affidavit were even thinner. Specifically, Melssen point out that the only relevant facts were Klang's averment that he knew A.B. to be a drug user and that drug sales had taken place at her residence, and Y.Z.'s assertion that Melssen and A.B. communicated about drugs. Melssen argued that this "scant factual evidence" did not justify the search that police conducted, which amounted to a "general search" of his "entire phone."

¶17    In challenging the search of his residence, Melssen argued that the evidence obtained from that search must be suppressed as "fruit of the poisonous tree" because the warrant authorizing the search relied almost entirely on the evidence obtained from the unconstitutional search of his smartphone.

¶18    In its response, the State argued that the warrant application established probable cause for the search of Melssen's smartphone. The State's argument focused almost exclusively on the battery that had occurred, and on the averment that Melssen sent text messages to A.B. following the altercation with Y.Z. Specifically, the State argued, messages on the smartphone would "likely contain information about why [the battery] occurred or who was involved, hence [the] request for the contents of those messages and/or phone calls."

¶19    Regarding the averments about "narcotic activity," the State made no attempt to argue that Klang's affidavit established probable cause that Melssen was a drug dealer or that evidence of drug trafficking would be found on his smartphone. The State merely argued that "common sense would cause a person

11

to infer that this incident may be drug related" based on the information in the affidavit about A.B.'s drug use.

¶20 The circuit court denied Melssen's motion. Regarding the search of his smartphone, the court confined its review to the "four corners" of the warrant application and determined that the application provided "sufficient probable cause" for the warrant. The court also rejected the argument that the search authorized by the warrant was "too broad," appearing to opine that it would have been impractical to authorize a more limited search because investigators have to "walk through an entire cell phone … to find what it is that [they]'re looking for." And the court declined to suppress the evidence obtained from the residence because, it determined, the smartphone evidence that supported the application for a warrant to search the residence had been lawfully obtained.

¶21 A jury trial on the drug charges was held in June 2024. The State's case rested in large part on the evidence recovered in the searches of Melssen's smartphone and residence. Officers testified about text messages that were recovered from Melssen's smartphone, and about the methamphetamine, drug paraphernalia, and other items that were found in the search of Melssen's residence and in the locked vehicle that was parked on the property.

¶22 Melssen's primary defense at trial was that he used methamphetamine, but that he was not involved in distribution or trafficking. In support, Melssen pointed out that the majority of the methamphetamine that was found on his property was recovered from the locked vehicle, which, an officer testified, was "registered to a person out of Ohio." Melssen argued that this vehicle and the methamphetamine inside it belonged to a friend of his, and that the State failed to prove that he had access to the vehicle.

¶23    The jury found Melssen guilty on all counts.  Melssen appeals.

## DISCUSSION

¶24    As mentioned, Melssen argues that the trial evidence was insufficient to sustain his convictions for possession of methamphetamine with intent to deliver and maintaining a drug trafficking place.[7]  He also argues that the evidence found in the searches of his smartphone and residence should have been suppressed.  We address Melssen's arguments in that order.

### I.  Sufficiency of the Evidence

¶25    Whether the evidence presented to the factfinder was sufficient to sustain a guilty verdict presents a legal question that we review de novo.  *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.  We reverse the conviction only if the evidence was "so lacking in probative value and force that no trier of fact, acting reasonably could have found guilt beyond a reasonable doubt."  *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  When conducting a review of the sufficiency of the evidence, "we consider all of the evidence that was submitted at trial," including any evidence that may have been "erroneously admitted."  *See State v. LaCount*, 2008 WI 59, ¶25, 310 Wis. 2d 85, 750 N.W.2d 780.

¶26    To convict Melssen of the disputed charges, the State had to prove that he intended to deliver methamphetamine to others, and that he knowingly maintained a place that was used for delivering controlled substances.  *See* WIS

---

[7] Melssen does not challenge the sufficiency of the evidence to support the paraphernalia charge.

JI—CRIMINAL 6035 (possession with intent to deliver requires that "[t]he defendant intended to deliver" the controlled substance, which means to "transfer or attempt to transfer [drugs] from one person to another"); WIS JI—CRIMINAL 6037B (maintaining a drug trafficking place requires that the place that the defendant maintained was used for "manufacture," "keeping," or "delivering" a controlled substance).[8]

¶27    Melssen's argument that the evidence was insufficient largely echoes his defense at trial—that the State failed to prove that he possessed methamphetamine in a sufficient quantity to prove that he intended to deliver methamphetamine to others or that he knowingly maintained a place that was used for delivering controlled substances. Melssen points out that the majority of the methamphetamine that police recovered from his property was found in a locked vehicle that was registered to an unidentified person from Ohio and that, Melssen asserted, belonged to his friend. Melssen argues that "[n]o evidence was shown that would have allowed a reasonable jury to believe [Melssen] even knew about, let alone possessed," the methamphetamine in the vehicle.

¶28    We disagree with Melssen's assessment of the evidence. Contrary to Melssen's argument, it is not fatal to the State's theory if the vehicle in which methamphetamine was found did not belong to Melssen. The jury was instructed

---

[8] In full, the standard jury instructions for the charges provide as follows. For possession of a controlled substance with intent to deliver, the State must prove that: the defendant possessed a substance; the substance is a controlled substance whose possession is prohibited by law; the defendant knew or believed that the substance was a controlled substance; and the defendant intended to deliver the controlled substance. *See* WIS JI—CRIMINAL 6035. For maintaining a drug trafficking place, the State must prove that: the defendant kept or maintained a structure or place; the place was used for manufacturing, keeping, or delivering a controlled substance; and the defendant kept or maintained the place knowingly. *See* WIS JI—CRIMINAL 6037B.

that it could find that Melssen possessed methamphetamine if it was "in an area over which [Melssen] ha[d] control" and he "intend[ed] to exercise control over the item." *See* WIS JI—CRIMINAL 920. The jury was also instructed that ownership "is not required" for possession, and that "[p]ossession may be shared." *See* WIS JI—CRIMINAL 920.

¶29 Melssen's attorney argued that the methamphetamine inside the vehicle belonged to Melssen's friend, but the jury was not required to credit that argument. Here, police found ample evidence related to distribution in Melssen's residence, including "a digital scale with white residue on it," notes about how to "convert a quarter pound into grams," more than ten firearms, and thousands of dollars in cash. And regardless of the legal ownership of the vehicle found on Melssen's property, the jury could reasonably infer that he exercised control over the vehicle and at least shared possession of the methamphetamine found inside it. Both inferences were reasonable, especially given that the State presented evidence that Melssen and the friend who purportedly owned the vehicle were sharing drugs, and at least some evidence that they were selling drugs together. *See Poellinger*, 153 Wis. 2d 493, 507 ("an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law").

¶30 Accordingly, contrary to Melssen's argument, there was sufficient evidence to sustain the convictions for possession of methamphetamine with intent to deliver and maintaining a drug trafficking place.

## II. The Search Warrants

¶31 Melssen also argues that the search warrants for his smartphone and residence did not comply with the Fourth Amendment, such that the evidence

found in these searches should have been suppressed. We begin by summarizing the legal principles that are pertinent to the Fourth Amendment issues here and then apply those principles to the warrants in Melssen's case.

## A. Legal Principles

¶32 The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated[.]" It further provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *see also* WIS. CONST. art. I, § 11 (containing a similarly worded state constitutional guarantee). This latter provision, referred to as the "Warrant Clause," sets forth two related requirements—probable cause and particularity—that are both relevant to this appeal. These dual mandates are meant to address "the central concern underlying the Fourth Amendment"—that the government should not have "unbridled discretion to rummage at will among a person's private effects." *See Arizona v. Gant*, 556 U.S. 332, 345 (2009).

¶33 To satisfy the probable cause requirement, a warrant-issuing magistrate must be apprised of sufficient facts to support the belief that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ward*, 231 Wis. 2d 723, ¶23 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[P]robable cause to believe that a person has committed a crime does not automatically give the police probable cause to search [a particular place]"; there instead must be a "nexus" between the criminal activity and the place to be searched and items to be seized. *See State v. Higginbotham*, 162 Wis. 2d 978, 995, 471 N.W.2d 24 (1991) (citation omitted). Whether a warrant is supported by

probable cause is a "practical, commonsense decision" that is made by examining the "totality of the circumstances" described in the warrant application. *State v. Jones*, 2002 WI App 196, ¶10, 257 Wis. 2d 319, 651 N.W.2d 305 (citations omitted).

¶34 Turning to the particularity requirement, this requirement is closely tied to probable cause. Specifically, a warrant must "particularly" describe the place to be searched and the items to be seized, *see* U.S. CONST. amend. IV; WIS. CONST. art. I, § 11, and must be limited to only those "specific areas and things for which there is probable cause to search." *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987). By establishing "the scope of the authorized search," *Kentucky v. King*, 563 U.S. 452, 459 (2011), the particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit," *Garrison*, 480 U.S. at 84.

## B. The Smartphone Warrant

¶35 Having outlined the relevant legal principles, we consider the warrant to search Melssen's smartphone, and specifically, whether it was supported by probable cause and particularity.

¶36 There are no United States Supreme Court cases, and no published Wisconsin cases, that have addressed what the dual mandates of the Warrant Clause require of an application for a warrant to search the contents of a smartphone. In the absence of binding authority, the circuit court appeared to conclude that, if there is probable cause to believe that evidence of a crime will be found on a smartphone, the particularity requirement is satisfied by identifying the specific smartphone that will be searched and the specific crime that the defendant

is suspected of committing. As applied here, the court appeared to conclude that the averments about "battery, domestic abuse, and narcotic activity" established probable cause for an essentially unrestricted search of the smartphone's contents. For reasons we now explain, we conclude that the Fourth Amendment requires a greater degree of particularity.

¶37 The United States Supreme Court addressed government searches of smartphones in *Riley v. California*, 573 U.S. 373 (2014). Although *Riley* does not specifically address the application of the Fourth Amendment's probable cause and particularity requirements, the case provides helpful guidance on the privacy interests implicated by smartphones. There, officers conducted a warrantless search of a suspect's smartphone, and the Court determined that generally speaking, such searches must be authorized by a warrant. *Id.* at 403.

¶38 In reaching this decision, the *Riley* Court relied on some of the special characteristics that distinguish smartphones from other places and items that may be the subject of a government search. *See id.* at 393-97. The Court observed that smartphones are, in effect, "minicomputers that also happen to have the capacity to be used as a telephone." *Id.* at 393. And, as the Court explained, due to their "immense storage capacity," portability, and pervasive use, a modern smartphone can provide "a digital record of nearly every aspect" of a person's life "from the mundane to the intimate." *Id.* at 395; *see also Burns v. United States*, 235 A.3d 758, 773 (D.C. 2020) (citing *Riley*, 573 U.S. at 393-94, 396, for the proposition that smartphones often contain "emails, text messages, notes, photographs, videos, internet browsing histories, calendars, personal contacts, [and] phone logs," "all 'dating back to the purchase of the phone, or even earlier,'" and that mobile "apps" can store "detailed information about all aspects of a person's life," from "political and religious affiliations, banking and other

18

financial matters, addiction treatments, dating and romantic interests, pregnancy milestones, hobbies, and 'buying or selling just about anything'").[9]

¶39    The concern about indiscriminate searches of residences by government actors is at the core of the Fourth Amendment, and the *Riley* Court observed that smartphones contain personal and sensitive information far beyond what would be found in a residence "in any form." *Riley*, 573 U.S. at 396-97 (observing that a smartphone "not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the smartphone is [in the home]").    In the same vein, the District of Columbia Court of Appeals has observed that "the collection of so much varied and sensitive information on a single device, carried almost everywhere by its owner, facilitates in an unprecedented way the reconstruction of the sum of an individual's private life and conveys far more about a person than could previously be found in the search of a physical space." *Burns*, 235 A.3d at 773 (citation modified) (citing *Riley*, 573 U.S. at 394).

---

[9] Notably, courts across the country have reasoned that, due to the quantity and variety of information that computers can store, the particularity requirement must be carefully applied when analyzing governmental searches of computers. *See, e.g.*, *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009) ("The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."); *United States v. Galpin*, 720 F.3d 436, 446-48 (2d. Cir. 2013) ("Where, as here, the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance[,] … [t]he potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous[.]"); *State v. Mansor*, 421 P.3d 323, 337-43 (Or. 2018) ("[t]he data contained on a personal computer is qualitatively and quantitatively different from the sort of information that could be found in other single objects" and "[t]he unique characteristics of computers … have implications for the application of the particularity requirement"); *United States v. Wecht*, 619 F. Supp. 2d 213, 242-45 (W.D. Pa. 2009); *State v. Castagnola*, 46 N.E.3d 638, 655-59 (Ohio 2015).

¶40    Given the above-described capacities of smartphones and their ubiquitous use in managing and recording many aspects of modern life, it is easy to imagine how an unlimited search of a person's smartphone would reveal private details of the person's life that are wholly unrelated to any criminal investigation that justified the search. For example, an unlimited search might reveal sensitive information about medical conditions and appointments (both for the smartphone owner and the owner's family members). It might reveal confidential communications with legal and other professionals. It might reveal the owner's private writings regarding political, religious, or moral beliefs. And it might reveal statements of passion or contrition that were intended for a loved one, or statements of self-reflection that the author may not have intended any other person to read.

¶41    For all of these reasons, we do not agree with the circuit court's conclusion that, to the extent there is probable cause that evidence of a crime will be found on a smartphone, this necessarily means that there is probable cause for an essentially unrestricted search of the smartphone's contents. Given the storage capacities and the routine and frequent uses of smartphones, adoption of that conclusion would amount to a judicial greenlight for precisely the kind of invasive governmental conduct that the Fourth Amendment was designed to prevent. *See Garrison*, 480 U.S. at 84; *State v. Noll*, 116 Wis. 2d 443, 450-51, 343 N.W.2d 391 (1984).

¶42    Under the circumstances, we join several other state and federal jurisdictions in emphasizing that, like other warrants, a warrant to search a

smartphone must be "carefully tailored to its justifications."[10]  *See Garrison*, 480 U.S. at 84 (addressing warrants in other contexts).  It is not sufficient for the warrant application to establish that there is probable cause to believe that there is a fair probability that the smartphone contains some evidence of a crime.  *See Burns*, 235 A.3d at 773.  "Just as probable cause to believe that a stolen lawnmower may be found in a garage" does not entitle police to search an "upstairs bedroom," *Garrison*, 480 U.S. at 84-85, probable cause to believe that a certain kind of evidence (such as text messages and other digital communications) will be found on the smartphone does not necessarily justify searching other types of data on the smartphone (such as internet browsing history or digital documents of other types).

¶43    Instead, to comply with the Warrant Clause's requirements, "the warrant must specify the particular items of evidence to be searched for and seized from the [smart]phone," and its authorization must be "limited to the time period and information or other data for which probable cause has been properly established through the facts and circumstances set forth under oath in the warrant's supporting affidavit."  *Burns*, 235 A.3d at 773; *see also Mansor*, 421 P.3d at 326 (noting that the Warrant Clause requires similar limitations when applied to warrants for a "computer or other digital device"); *Custodian of Records v. State (In Re Doe)*, 2004 WI 65, ¶¶50-51, 272 Wis. 2d 208, 680 N.W.2d 792 (an "overly broad" subpoena violated the Fourth Amendment because

---

[10] *See, e.g.*, *Burns v. United States*, 235 A.3d 758, 773-75 (D.C. 2020); *United States v. Winn*, 79 F. Supp. 3d 904, 919 (S.D. Ill. 2015); *Buckham v. State*, 185 A.3d 1, 15, 18-19 (Del. 2018); *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616, 631-34 (2014); *People v. Thompson*, 178 A.D.3d 457, 457-459 (N.Y. App. Div. 2019); *Commonwealth v. Broom*, 52 N.E.3d 81, 88-90 (Mass. 2016); *Richardson v. State*, 282 A.3d 98, 105, 113-124 (Md. 2022); *People v. Coke*, 461 P.3d 508, 516-17 (Colo. 2020).

it sought "all of the data from the computer system of an entire branch of the state government," without specifying the "topics" or the "types of documents" sought and without limiting the search to a relevant time period). In some circumstances, the factual averments in a warrant application might establish a sufficient nexus between the likely contents of a smartphone and the commission of a crime such that a fairly broad search of the smartphone's contents would be justified, but in other cases, the averments will provide probable cause for a much more limited search.

¶44 We now apply these principles to the warrant to search Melssen's smartphone. As mentioned, the question is whether the facts in the warrant application established "a fair probability that contraband or evidence of a crime [would] be found" on the smartphone. *Ward*, 231 Wis. 2d 723, ¶22. Here, the majority of the averments in the warrant application were about the battery of Y.Z.

¶45 Klang's affidavit provided the following facts that are relevant to an analysis of the likelihood that evidence related to the battery would be found on Melssen's smartphone: Melssen and A.B. talked by phone the morning of May 25, 2021, and Melssen learned that Y.Z. had assaulted A.B.; Melssen physically confronted Y.Z. later that day; Melssen was "repeatedly sending text messages to someone" from the ambulance and hospital shortly after the altercation and A.B. received "numerous" text messages from Melssen during this time period; and Melssen and A.B. both indicated that Y.Z. was the aggressor but police had determined that Y.Z.'s account that Melssen attacked him was more credible.

¶46 Based on these averments, a warrant-issuing judge could reasonably determine that there was a fair probability that evidence related to the May 25 battery would be found on Melssen's smartphone. *See Ward*, 231 Wis. 2d 723,

¶21 (we defer to the warrant-issuing judge's determination "unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding"). Although Klang's affidavit did not make any explicit connection between any likely contents of Melssen's smartphone and the battery, a warrant-issuing judge is permitted to make the "usual inferences reasonable persons would draw from the facts presented." *Bast v. State*, 87 Wis. 2d 689, 693, 275 N.W.2d 682 (1979).

¶47 Here, the judge could have reasonably inferred that the battery was motivated by the information that Melssen learned in his phone call with A.B. that morning, and that there was a fair probability that evidence relevant to the motivation, timing, and events of the battery would be found in certain call logs and communications on Melssen's smartphone.[11] More specifically, the judge could reasonably infer that there was a fair probability that the call logs from May 25 would provide evidence related to the timing of the battery. The judge could also reasonably infer that there was a fair probability that any digital communications between Melssen and A.B. on the day of the battery would reveal evidence related to Melssen's confrontation of Y.Z. at A.B.'s residence. For example, any messages after the phone call might reveal a plan to confront Y.Z. at A.B.'s residence, and Melssen's "numerous" text messages to A.B. shortly after the battery might reveal statements by Melssen about what had just happened, or discussion about what Melssen might have suggested that A.B. should tell the police about the incident. Additionally, given the nature of Melssen's altercation

---

[11] By "call log," we mean to refer to a list of incoming and outgoing telephone calls, including the telephone numbers and call duration, that is stored on the smartphone and is generated in applications that allow users to place and receive calls over cell phone towers or wireless connections.

with Y.Z. and the averment that he was repeatedly texting from the ambulance and hospital, the judge could reasonably infer that Melssen's communications with persons other than A.B. would likely relate to the confrontation that had just occurred. We therefore conclude that under the totality of the circumstances, the affidavit established probable cause to believe that evidence of the battery would be located on the smartphone.

¶48     This does not end our inquiry. As discussed above, the Fourth Amendment also requires that a warrant be "tailored to its justifications." *Garrison*, 480 U.S. at 84. Here, as discussed, there was probable cause to believe that evidence related to the battery would be found in the call log from May 25, 2021, in the direct communications on the smartphone between Melssen and A.B. from that same date, and in any other communications on the smartphone during the time period immediately following the altercation in which Melssen was repeatedly texting from the ambulance and the hospital. However, the affidavit did not reasonably suggest that evidence related to battery would be found in any other data stored in Melssen's smartphone. There were not, for example, any averments raising the reasonable inference that Melssen took any pictures or videos or conducted any internet searching to plan his encounter with Y.Z. or that were otherwise related to the altercation that occurred. Nor were there any averments that would raise a reasonable inference about any call logs, communications, or other documents or data from any other date.

¶49     Yet, the warrant authorized police to conduct a much broader search of Melssen's smartphone. It authorized police to search all of Melssen's call logs ("incoming and outgoing telephone numbers and/or call details") without any limitation on date. It also authorized police to search all of Melssen's messages ("SMS/MMS text, picture, video or audio messages") without any limitation with

respect to the date or the identity of the sender and recipient. And, beyond the call logs and messages, the warrant also authorized officers to search for, among other things, "[i]mages or visual depictions in connection with battery," "[k]eywords, search terms, and other data indicating or tending to establish the … possession of files containing information related to battery," "[i]tems containing or displaying passwords, access codes, usernames," "[c]orrespondence or other documents … exhibiting an interest in battery," and "[i]tems [including credit card bills and telephone bills] that would tend to establish ownership or use of cellular telephones and … service accounts." Accordingly, at least with respect to the authorization to search for evidence related to battery, the warrant is overbroad because it is not carefully tailored to its justifications.[12]

¶50 The State points out that battery was not the sole ground identified in the warrant for searching Melssen's smartphone. It argues that there was probable cause for a broader search of the smartphone because there was a fair probability that it would contain evidence of a drug-related crime, and that the circuit court denied the motion to suppress in part based on information about "narcotic activity." Yet, for reasons we now explain, we conclude that the warrant application's averments about "narcotic activity" do not provide the probable cause and particularity needed to comply with the Fourth Amendment.

---

[12] The warrant was also overbroad if its justification was to locate evidence related to, in the words of the warrant, "domestic abuse incidents," rather than evidence related to Melssen's battery of Y.Z. There was only one averment in the warrant application that related to an allegation of domestic abuse: Melssen's statement that, during a phone call on the morning of May 25, 2021, A.B. told him that Y.Z. had assaulted her the night before. Perhaps the warrant-issuing magistrate could have inferred that the May 25, 2021 communications between Melssen and A.B. might contain additional information about that particular incident, but nothing more.

¶51    First, the averments in the warrant application about "narcotic activity" were exceptionally vague and exceedingly slim.  Here, there were only two averments in Klang's affidavit that had anything to do with drugs.  There was Y.Z.'s uncorroborated statement that A.B. and Melssen are "constantly communicating about drugs and refer to drugs as 'groceries.'"[13]  And there was Klang's averment that he was aware that A.B. was a "drug user" and that "sales of methamphetamine" had taken place at A.B.'s residence.  Even drawing all reasonable inferences in favor of the warrant-issuing judge's determination, we conclude that these facts are "clearly insufficient" to establish probable cause that evidence of a drug-related crime would be found on Melssen's smartphone.  *Ward*, 231 Wis. 2d 723, ¶21.

¶52    To further illustrate, the only averment in the affidavit that attempted to provide a nexus between the likely contents of the smartphone and a potential drug crime was the vague statement that A.B. and Melssen "communicate about drugs and refer to them as 'groceries.'"  But it would not have been a crime for Melssen to merely communicate with A.B. about drugs, even if A.B. was a known drug user.  *See generally* WIS. STAT. ch. 961 (providing that possession, distribution, and manufacture of controlled substances is illegal).  At most, the use of the term "groceries" vaguely suggests that Melssen and A.B. might have attempted to purchase drugs from some unspecified person at some unspecified time, but there is nothing in the warrant application that reasonably suggests

---

[13] *See* **State v. Kolk**, 2006 WI App 261, ¶13, 298 Wis. 2d 99, 726 N.W.2d 337 (when the probable cause assessment is based on information from a civilian's report, the value of the information will depend in part on "the extent to which [the report] can be verified by independent police investigation" (citation omitted)).

anything more. That is, there is nothing in the warrant application that reasonably suggests that Melssen was selling drugs to A.B. or any other person.

¶53 The State accurately points out that the warrant-issuing judge was not required to assume an innocent explanation for Melssen's communications with A.B. But the problem here is not that the judge was presented with a set of facts that establish probable cause but that could also have an innocent explanation. The problem is that the information about "narcotic activity" was of insufficient quality and quantity to ring the probable cause bell in the first instance. *See* **Ward**, 231 Wis. 2d 723, ¶¶26-28 (a warrant-issuing judge's conclusion must be based on a reasonable view of the totality of the facts before it). Accordingly, the averments in Klang's affidavit did not establish probable cause to search Melssen's phone for evidence of "narcotic activity."[14]

¶54 Second, even if the vague averments about "narcotic activity" were marginally adequate to establish probable cause that evidence of drug possession would be found on the smartphone, the averments would not broaden the search all that much beyond what is reasonably justified by the averments about battery, as we have discussed above. As stated, the warrant application did not establish

---

[14] We observe that, in describing its conclusion about Melssen's "narcotic activity" during the proceedings on the motion to suppress, the circuit court mentioned a number of allegations that were not contained in the warrant application. The court appears to have learned about these additional allegations in the course of the two criminal proceedings against Melssen. Specifically, the court stated that "the evidence gleaned was that [A.B.] and … Melssen had engaged in a sexual relationship," that A.B. had been using that relationship "to acquire drugs from Melssen," and that Y.Z.'s statements about Melssen's and A.B.'s use of drugs were credible because Y.Z. admitted his own use of illegal drugs. As stated, this information was not included in the warrant application, and we do not consider these additional allegations in our analysis. *See, e.g.*, **State v. Green**, 2022 WI 41, ¶2, 402 Wis. 2d 44, 975 N.W.2d 198 (whether a warrant was supported by probable cause is limited to the "record that was before the warrant-issuing judge" (citation omitted)).

probable cause to believe that Melssen was distributing drugs, and there were no averments about drug-related communications between anyone other than Melssen and A.B. Under the circumstances, a narrowly tailored warrant might authorize the search of the communications between Melssen and A.B. over a slightly longer timeframe than a warrant that was based exclusively on the averments about battery. But, given the limited averments about communications between Melssen and A.B., there would be no justification to search for Melssen's communications with anyone other than A.B.

¶55 For all these reasons, we conclude that the warrant to search Melssen's smartphone authorized a far more extensive search than was allowed by the Warrant Clause's dual mandates of probable cause and particularity. Although the warrant application and supporting affidavit established probable cause for a limited search of Melssen's call log and communications over a limited period of time on the date of the battery, it did not establish probable cause to search for any other items or information on Melssen's smartphone. We therefore conclude that Melssen's Fourth Amendment rights were violated by the search.

¶56 We now turn to remedy. As noted, the primary evidence that was obtained in the smartphone search were Melssen's incriminating text messages with "Becky" and "Bill's Girlfriend." These text messages suggested that Melssen was distributing illegal drugs. Police used this evidence as the main basis to obtain the warrant to search Melssen's residence, and the prosecution introduced the text messages as evidence in the trial.

¶57 "Suppression is the usual remedy for a Fourth Amendment violation." *See* ***State v. Ferguson***, 2009 WI 50, ¶21, 317 Wis. 2d 586, 767 N.W.2d 187. However, there are several exceptions to the application of the

exclusionary rule, and "[t]he fact that a Fourth Amendment violation occurred … does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009).

¶58 Here, the State argues that the "good-faith" exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897, 922 (1984) (addressing the good-faith exception in the context of an invalidated search warrant); *State v. Eason*, 2001 WI 98, ¶¶64-72, 245 Wis. 2d 206, 629 N.W.2d 625 (same). Additionally, the State argues, the text messages with "Becky" and "Bill's Girlfriend" might not be subject to the exclusionary rule if the messages were in the officers' "plain view" as they executed the valid portions of the search warrant. *See State v. Oswald*, 2000 WI App 3, ¶¶41-44, 232 Wis. 2d 103, 606 N.W.2d 238 (1999) (addressing circumstances in which, during the execution of a valid warrant, officers were permitted to seize items outside of the scope of that warrant under the plain view doctrine).

¶59 Although we have concluded that the warrant to search the smartphone was overly broad in violation of the Fourth Amendment, we do not resolve the potentially fact-intensive issues surrounding the determination of whether the text messages found in the resulting search must be suppressed. The State has preserved its arguments about the plain view doctrine and the good faith exception, but it did not have an opportunity to meaningfully develop a factual record on these doctrines during the circuit court proceedings.[15] Because the

---

[15] During the circuit court proceedings on the motion to suppress, the State argued that the plain view doctrine and the good faith exception to the exclusionary rule applied, and the State asked for "a hearing to determine the applicability of the good-faith exception" "[i]n the event the court finds in favor of the defendant" with respect to a Fourth Amendment violation. Then, as noted, at the outset of the hearing, the court denied the motion without taking evidence

(continued)

existing record does not allow us to determine whether either of these doctrines applies, a remand is appropriate to allow the circuit court to address these doctrines and any related issues. *See State v. Anker*, 2014 WI App 107, ¶¶26-27, 357 Wis. 2d 565, 855 N.W.2d 483 (remanding to the circuit court to determine whether the exclusionary rule applied when the circuit court had not taken evidence or made factual findings on the issue).

## C.  The Residence Warrant

¶60   Before concluding, we briefly address the warrant to search Melssen's residence.  As mentioned, Klang submitted a second affidavit in support of the issuance of a warrant to search the residence, and that affidavit relied in large part on the incriminating messages uncovered from the search of Melssen's smartphone.  According to Melssen, that makes the evidence obtained in the search of his residence "fruit of the poisonous tree" that must be suppressed.  *See State v. Roberson*, 2006 WI 80, ¶32, 292 Wis. 2d 280, 717 N.W.2d 111 ("evidence must be suppressed as fruit of the poisonous tree" if such evidence is obtained from other illegally obtained evidence).

¶61   The State argues that we can determine that the warrant to search the residence was supported by probable cause, even if the text messages that were found on Melssen's smartphone are excised from the warrant application.  In support, the State points to a portion of Klang's affidavit in which Klang summarizes a statement that Melssen made to police.  In that statement, Melssen admitted that there was a "[m]ethamphetamine bong" inside of his residence.  The

---

based on its review of the four corners of the application for the smartphone warrant and its determination that the warrant did not violate the Fourth Amendment.

State argues that Melssen's statement, by itself, provided probable cause for the issuance of a warrant to search the residence.

¶62 We need not consider this argument by the State. As discussed above, *supra* note 6, the circuit court determined that this statement must be excised from the warrant application because it was obtained in violation of the Fifth Amendment. *See* **State v. Jackson**, 2016 WI 56, ¶¶76-77, 369 Wis. 2d 673, 882 N.W.2d 422 (endorsing the conclusion that "tainted statements" that were obtained in violation of the Fifth Amendment should be excised from a search warrant application). The State does not develop an argument challenging this determination on appeal, and we take the State's failure to do so as an acknowledgment that the circuit court did not err.

¶63 Once Melssen's statement about the "methamphetamine bong" is excised from the warrant application for the residence, the primary averments supporting probable cause to search the residence were the text messages recovered from Melssen's smartphone.[16] Because we do not determine whether these text messages should be suppressed, we also do not determine whether they could be used as probable cause to support the residence warrant. On remand, the circuit court should address how its conclusion on the smartphone evidence affects the validity of the warrant for the residence and any other related issue.

---

[16] The only other averments in the affidavit for the second warrant were conclusory averments about Klang's knowledge of prior drug-related investigations into Melssen's activities. Specifically, Klang averred, "I know from prior law enforcement investigations, [Melssen] was reportedly selling methamphetamine and/or other illegal drugs from his residence[,]" and "[i]n checking our in-house records, I located multiple contacts involving [Melssen] within the prior year." A finding of probable cause cannot be based only "on the affiant's suspicions and conclusions." **Bast v. State**, 87 Wis. 2d 689, 693, 275 N.W.2d 682 (1979). The State does not argue that these averments by Klang would have been sufficient on their own to satisfy the probable cause requirement, and we discern no room for such an argument.

**CONCLUSION**

¶64     In sum, we conclude that the State presented sufficient evidence to sustain Melssen's convictions.  However, with respect to Melssen's motion to suppress evidence obtained in the search of his smartphone and residence, we conclude that the warrant to search Melssen's smartphone violated the Fourth Amendment because it was overbroad and not carefully tailored to its justifications.  We vacate the order denying the motion to suppress, and we remand to the circuit court for further proceedings.  On remand, the circuit court should address whether any or all evidence found on Melssen's smartphone must be suppressed as a result of the Fourth Amendment violation; whether the evidence obtained in the search of Melssen's residence must be suppressed as a result of the court's determinations about the evidence found in the search of his smartphone; and whether Melssen is entitled to a new trial.

*By the Court.—*Pretrial order vacated and cause remanded with instructions.

Recommended for publication in the official reports.